Harvey S. HAISLIP

v.

UNITED STATES.

Scott G. LAMB, William I. Lehrfeld

v.

UNITED STATES.

Mary S. SIMON

v.

UNITED STATES.

Nos. 442–59, 466–59, 439–59.

United States Court of Claims.

Jan. 18, 1961.

Rehearing Denied May 3, 1961.

Guy Emery, Washington, D. C., for plaintiff Harvey S. Haislip.

Franz O. Willenbucher, Washington, D. C., for plaintiffs Scott G. Lamb and William I. Lehrfeld.

Joseph B. Friedman, Washington, D. C., for plaintiff Mary S. Simon. Julius Schlezinger, Washington, D. C., was on the briefs.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant.

WHITAKER, Judge.

These are actions to recover retired pay, the right to which first accrued more than six years prior to the filing of the petition in each case, on the theory that within six years of the filing of the petition the Board for Correction of Naval Records corrected plaintiffs' records to show they were entitled to the pay they claim for the period in question, and that this created a new cause of action.[1]

The cases are before us on motions for summary judgment filed by the plaintiffs and cross-motions for summary judgment filed by the defendant in each case. The defendant, in all three cases, has moved for summary judgment on the ground that the claims are barred by the six-year statute of limitations [28 U.S. C.A. § 2501] applicable to claims in this court because the claim of each plaintiff accrued on the day he was last released to inactive duty, and that date, in the case of each plaintiff, was more than six years prior to the filing of his petition in this court. On the other hand, the plaintiffs say that their respective claims accrued when the Board for Correction of Naval Records corrected the records of each of the plaintiffs to show each of them was entitled to the pay claimed

1. Plaintiff, Mary S. Simon, is the widow of Lt. Cmdr. Robert E. Simon, United States Navy, Retired, and now deceased. Here- after, reference to "plaintiffs" includes Robert E. Simon.

for the period in question and its action in each case was approved by the Secretary of the Navy, and the Navy subsequently refused to pay.

We shall state the facts in the Haislip case. The essential facts in the other cases are the same except as to dates and rank.

Plaintiff Haislip, after having been previously retired for physical disability, was recalled to active duty and was thereafter returned to the retired list on February 10, 1946. At that time he was receiving the active duty pay of a captain with more than 30 years' service; however, upon his return to the retired list, he was paid retired pay based on service of more than 21 years but less than 24 years.

After our decision in Gordon v. United States, 140 F.Supp. 263, 134 Ct.Cl. 840, holding that an officer, recalled to active duty after retirement and later returned to the retired list, was entitled to include the time he was in an inactive status in computing his retired pay, plaintiff brought suit here and also filed a claim with the Comptroller General claiming that, counting the period of his inactive status, he had had more than 30 years' service, and was entitled to retired pay based on this length of service. The Comptroller General allowed plaintiff's claim for the ten-year period prior to the filing of his claim with him, but disallowed it for the period which accrued prior thereto. His suit in this court was thereupon dismissed, on plaintiff's motion.

Thereafter plaintiff requested the Board for Correction of Naval Records to correct his record to show that he was entitled to the pay claimed for the period disallowed by the Comptroller General.

On June 15, 1959, the Board rendered its "decision" on the application of Major Gordon, an officer in the Marine Corps, together with a number of other similar applications, including those of the plaintiffs in the cases now before us. The facts, in the case of Major Gordon, are in all material respects similar to the facts with respect to the other applicants.

The Board found that in its prior report of July 24, 1958, it had recited the denial by the Comptroller General of Gordon's claim for increased retired pay, his suit in this court, and our decision on it, and the subsequent payment of the claim by the Comptroller General for the ten-year period prior to the filing of the claim with him, and its recommendation that—

"Major Gordon's naval record be corrected, where appropriate, to show his entitlement to adjustment of retired pay in accordance with the provisions of Section 15, paragraph 4 of the Pay Readjustment Act of 1942 [37 U.S.C.A. § 115] for the period 13 May 1943 to 16 March 1944, inclusive. * * *"

It further found that the Secretary of the Navy had approved the Board's recommendation on 21 October, 1958.

The Board then rendered its "decision" on the rights of Major Gordon, based on the facts shown by his record and the applicable statute. It directed that his record be "corrected" to show that he had these rights. The Board then recommended the payment of "all monies lawfully found to be due from the Department of the Navy." The action of the Board was approved by the Assistant Secretary of the Navy.

It will be noted that the Board did not recommend the correction of any fact appearing in Gordon's record.

However, notwithstanding the Board's decision, the Navy Department refused to pay plaintiff because of a ruling by the Comptroller General contained in a letter from the Assistant Comptroller General to the Finance and Accounting Officer of the Army, in the case of Captain Oleson. Captain Oleson's record had been "corrected" in a way similar to the "correction" of the records in Gordon, Haislip, and others. The Comptroller General said in part:

"Under the provisions of 10 U.S.C. 1552 the Secretary of the Depart-

ment concerned is authorized to 'correct' military records and, it is our view that action under that section, if it is to give rise to a right to the payment of money, must, without exception, be a change of facts as set out in the original record, or an addition to, or a deletion of some of, such facts, such change, addition, or deletion being necessary to establish a proper basis to support the payment. An affirmation of facts already in a military record does not constitute a correction of that record * * *."

Plaintiff then brought suit in this court. After defendant had answered, plaintiff filed a motion for summary judgment and defendant filed a cross-motion on the ground that the claim was barred by the statute of limitations. Manifestly it is barred, unless the "decision" of the Correction Board gave plaintiff a right he had not had before.

We are unable to see how the "decision" of the Correction Board gave plaintiff any right he had not had all along. No fact appearing in plaintiff's record was changed. The facts remained as they had been. On the basis of those facts, plaintiff was entitled to bring suit immediately after he was returned to the retired list and the denial by the Navy of the claim he now makes. That was in 1946, which was 13 years before his petition was filed in this case. In that 13 years the facts and the law governing his rights have not changed. All that the "decision" of the Board amounted to was a decision that on the basis of those facts plaintiff was entitled to the rights he now claims. The Board's decision was merely a legal conclusion, based on the law and the facts of record, no one of which was changed by the Board.

Indeed, we had already come to the conclusion that the law was as the Board said it was. We so decided in Gordon v. United States, supra. Would anyone say that our decision in that case gave plaintiff a right he had not had before? We said in that case that Gordon had had these rights all along, from the time

he had been returned to the retired list. And that is all the Correction Board said when it allegedly "corrected" his record. But these rights accrued more than six years prior to the filing of his present suit and, hence, we have no jurisdiction to render judgment, except for the six-year period prior to the filing of plaintiff's petition. Plaintiff has already been paid for this period and more.

Of course plaintiff is justly entitled to what he asks for, but no more so than thousands of other claimants who have not asserted their rights in time and allowed the statute of limitations to run against them.

In Kavanagh v. Noble, 332 U.S. 535, 68 S.Ct. 235, 237, 92 L.Ed. 150, the Supreme Court said this with reference to statutes of limitations on suits against the United States: "Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." See also our opinion in Melchior v. United States, 145 F.Supp. 193, 136 Ct.Cl. 483. If we should give plaintiff a judgment, it would be in the face of the statute of limitations of six years on suits in this court. Whether the Correction Board had or had not authority to pay plaintiff, we have not.

It results that plaintiffs' motions for summary judgment are denied and defendant's motion in each case is granted. Plaintiffs' petitions will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

MADDEN, Judge (dissenting).

The facts in the case of the plaintiff Haislip, which are typical of those in all these cases, will be used in this discussion.

Haislip joined the Navy in 1907 as a midshipman, was commissioned in 1912 and served continuously until 1925, in which year he was retired, in the grade of lieutenant commander, for physical disability incurred in line of duty. He

was recalled to active duty in 1941; was advanced, in 1942, to the grade of captain on the retired list, and served continuously until February 10, 1946, when he was again retired. At the time of his second retirement, he was receiving the active duty pay and allowances of a captain with over thirty years' service.

From the date of his retirement in 1946 until October 31, 1958, a period of more than twelve years, he was paid retired pay at a rate substantially lower than the rate to which he was entitled. That was because the fiscal authorities erroneously failed to give the plaintiff and other officers similarly situated the benefit of section 15, paragraph 4, of the Pay Readjustment Act of 1942, 56 Stat. 359, 368. That paragraph provided that an officer who had served before November 12, 1918, "hereafter retired" should receive retired pay at the rate of 75 percent of his active duty pay at the time of retirement.

A Major Gordon of the Marine Corps had been retired in 1939 and had been recalled to active service in 1942, and had gone back to retired status in 1943. The fiscal authorities had treated him as not having "retired" in 1943, but in 1939, and therefore not "hereafter retired" as required by the 1942 statute. Gordon sued in this court for the difference between the retired pay which he had received, and that which he should have received if he had been given the benefit of the 1942 Act. This court held, 140 F.Supp. 263, 134 Ct.Cl. 840 (1956), that Gordon's "re-retirement" in 1943 was a retirement, within the meaning of the 1942 Act, and that he was entitled to recover. Other cases presenting the same problem were similarly decided, the last one being Field v. United States, 158 F.Supp. 580, 141 Ct.Cl. 312, decided January 15, 1958. The Supreme Court of the United States on June 23, 1958, denied the Government's petition for certiorari in Field. 357 U.S. 926, 78 S.Ct. 1372, 2 L.Ed.2d 1371.

The error of law having been corrected, the Navy with the approval of the Comptroller General, paid the plaintiff Haislip, and other officers whose situation was similar to Gordon's a part of the deficit owing to them. In the case of Haislip, he was paid the deficit which had accrued in his retired pay between May 28, 1948 and October 31, 1958. For the period since October 31, 1958, Haislip's retired pay has been correctly computed and paid. But he has not been paid the correct amount of retired pay for the period between the date of his retirement, February 10, 1946, and May 28, 1948.

Since the plaintiff's status and entitlement were exactly the same for the period February 10, 1946 to May 28, 1948 as they were for the period May 28, 1948 to October 31, 1958, and since the plaintiff was paid for the latter period, an explanation of the reason for refusal to pay for the earlier period is in order.

The explanation is that the 1946–1948 period was more than ten years prior to the time, in 1958, when the plaintiff's claim was presented to the Comptroller General. The Act of October 9, 1940, 54 Stat. 1061, 31 U.S.C.A. § 71a provides that a claim against the United States cognizable by the General Accounting Office shall be forever barred unless it is presented to that office within ten years from the date on which the claim first accrued. The Comptroller General, then, in directing the Navy to pay the plaintiff for the ten year 1948–1958 period, did for the plaintiff all that he was authorized to do.

On April 24, 1959, the plaintiff applied to the Board for Correction of Naval Records for correction of his record to show his entitlement to his correct amount of retired pay for the 1946–1948 period. The statute authorizing the creation of that Board says, 65 Stat. 655, 10 U.S.C. § 1552:

> "no corrective action shall be taken under this subsection unless the request therefor be filed * * * within three years after * * * discovery of the alleged error or injustice, or within ten years after the date of enactment of this Act, whichever be the later."

The date of the Act was October 25, 1951. The plaintiff's application was, therefore, timely.

On June 1, 1959, the Correction Board acted upon the applications of the plaintiff Haislip and several other officers. It said:

"f. That in view of the foregoing findings, this Board further finds that Petitioners, through error, were not authorized retired pay at the rate to which each was legally entitled and failure to so authorize payment constitutes an injustice warranting corrective action."

Decision:

"It is the decision of this Board that the naval record of the following subject officers be corrected, where appropriate, to show their entitlement to adjustment of retired pay in accordance with the provisions of Section 15, paragraph 4, of the Pay Readjustment Act of 1942, for the period as specified below."

The Board recommended that the Navy pay to each of the petitioners the amount found to be due as a result of the correction. The Board's recommendation was reviewed and approved by an Assistant Secretary of the Navy on June 17, 1959.

It would seem that the officers would then have received their money, and the incident would have closed. They were not paid. The reason was that on September 11, 1959, the Assistant Comptroller General, in answer to an undated letter from the Office of the Chief of Finance of the Army, had rendered an opinion to the effect that the action of the Army Correction Board, in a situation in all respects comparable to that of Haislip and the other Navy officers, was beyond its powers. The opinion said:

"The correction board's action in this case appears to be an attempt to avoid the operation of a statute of limitations by means of a recital of facts in the existing record. Such action is without legal significance. The authority of the Secretary con-cerned, acting through a correction board, is limited to the correction of factual situations and the right of the member involved to receive a payment of money from the Government depends on a proper application of pertinent statutes to the facts shown in the corrected record. 34 Comp.Gen. 7, 12; 38 id. 208, 210. If the existing record states the actual facts and the purported correction merely recites such facts, no additional rights can accrue as a result of such action. 39 Comp.Gen. 178, 180."

On October 6, 1959 the plaintiff Haislip was advised by letter from the Navy Finance Center, as follows:

"Further reference is made to your claim received 7 July 1959 for monetary benefits due by reason of correction of naval records.

"The Comptroller General has ruled in his decision B–137384 of 11 September 1959 that the authority of the Secretary concerned is limited to the correction of factual situations and the right of the member involved to receive payments depends on proper application of pertinent statutes to the facts shown in the corrected record.

"Since the correction of your records did not change the facts in your case but merely pointed out such facts, no additional rights can accrue as a result of such action and there is no entitlement to additional retired pay for the period 10 February 1946 through 27 May 1948."

With due respect, I think the opinion of the Assistant Comptroller General was wrong. It says in effect that the Secretaries and their Correction Boards have power to act only when there is presented to them some additional fact which had been omitted from the applicant's record, the insertion of which would create a record which would entitle him to some additional benefit. That would mean, for example, that if a soldier's date of enlistment, reenlistment, rank, combat his-

tory and all other items material to his pay rate were correct, but because of a mistake of inadvertence or mathematics, or a mistake in the application of a law, he was not paid the amount to which the law entitled him, a Correction Board could not give him relief. He could get relief in this court, if he would go to the trouble and expense of litigation, and would act within six years. He could, at similar trouble and expense, go to the General Accounting Office, if he did it within ten years. But to his own department of the armed services, he could not go at all, if the appropriation relevant to the time in question had expired, which I suppose it would have long before the six or ten year periods of limitation had expired.

Congress, in 1946 authorized the creation of the Correction Boards in order to enable the services to correct their own errors. There is not the slightest intimation in the statute or in its legislative history that Congress intended to draw some fine line between mistakes of fact and mistakes of law, or that Congress intended that a soldier or sailor who had been paid less than the law entitled him to, should have to resort to some difficult and expensive course of action to get the rest of his money, just because he was underpaid by reason of a misinterpretation of a statute, which misinterpretation had been long since corrected.

The statute itself, 10 U.S.C. § 1552 makes its purpose plain:

"§ 1552. *Correction of military records: claims incident thereto.*

"(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of the Treasury may in the same manner correct any military record of the Coast Guard. Except, when procured by fraud, a correction under this section is final and conclusive on all officers of the United States."

This is not a grant of a narrow and grudging jurisdiction. It intended not only to do justice to servicemen but to make it unnecessary for them to bring their grievances to Congress for special legislation. It intended to give the Secretaries something approaching the wide discretion which Congress itself had to remedy injustices.

In the case of the soldier, referred to above, his pay could not be raised from the improper amount paid him by mistake of fact or law to the proper amount, without changing some figures on the payroll. It is hard to see why that is not a correction of his record. The fact that the correction is simple and easy to make, when the mistake of fact or law has been corrected, certainly does not undermine the jurisdiction of the Correction Board.

. The opinion of the Assistant Comptroller General, quoted above, suggests some annoyance on the part of his office at the fact that officers like the plaintiffs are escaping the rigors of the statutes of limitations. The statute applicable to this court is six years. We have no reason to be annoyed because a claimant whose claim is eight years old and who could not get relief here can get relief from the Comptroller General. That is simply because Congress, in its wisdom, has seen fit to give that official a ten-year statute of limitations. In the same way, Congress has given the Secretaries the authority, up to October 31, 1961, to correct injustices. The fact that this court, and the Comptroller General, do not have so much leeway is irrelevant.

The Assistant Comptroller General's opinion of September 11, 1959, quoted above, seems to have been rendered in disregard of the representations which the Comptroller General's spokesman had made to the Committee of the House of Representatives, when the Committee was working out the text of the Act.

The testimony of Mr. John T. Burns, now Associate General Counsel of the General Accounting Office, appears on pages 379–381 of the hearings before the sub-committee of the House Committee on Armed Services on H.R. 1181, 82d. Cong., 1st Sess.

"Mr. Doyle. Therefore what you wish to do is to have the General Accounting Office reserve in the bill and be the final authority as to whether the actual audit is correct as to amount.

"Mr. Burns. That is right.

"Mr. Doyle. Not to go into the merit of the correction of the record or even the creation of a record?

"Mr. Burns. That is right.

\*    \*    \*    \*    \*    \*

"Mr. Doyle. I can see some merit in having a duplicate check as to the accuracy of the computations as between the Department and the General Accounting Office, but I certainly would not want to see Congress turn over the responsibility of administration and determination and correction of records to a Department and give them jurisdiction because the Congress did not want to bother with it any more, like it did under the other Tort Claims Act, and then have another Department go in and question the correctness of the procedure, and all that sort of thing. It would be in order if the Department were merely acting as an accounting office. (p. 380)

"Mr. Burns. Sir, when the statute vests a discretion in the head of the Army, Navy, or Air Force to make a certain kind of determination and that obviously involves the exercise of a discretion, the Comptroller General is certainly not going to arrogate to himself the exercise of that discretion. That is the point I want to make, that where the statute vests in some officer of the Government the authority to make a determination, he should exercise it.

"Mr. Doyle. May I ask you to do an unusual thing? You have given us the arguments against the bill as it stands and the arguments for permitting the General Accounting Office to do this audit. What are the arguments against permitting the General Accounting Office to do this audit? (p. 381)

"Mr. Burns. I suppose in the back of the Department's minds there is some fear that the General Accounting Office will, under their jurisdiction to audit and make determinations of law with respect to the legality of payments, seek to encroach upon the *jurisdiction* of the Departments to make these corrections of records. In other words, there possibly is a *fear* by the Department that after they see fit to make certain corrections the General Accounting Office will look at the thing and say, '*Congress never thought you would make any such correction as this. This is obviously "haywire" and we just won't pay off,* in a case like that.' I suppose that is what the Department had in mind." (p. 381.) (Italics supplied.)

In his colloquy with Representative Hess, Mr. Baier of the Department of Defense expressed his fears that the Comptroller General would attempt to review the authority of the Secretary of the Navy. He was assured that this would not happen. (Hearings, supra, p. 391.)

"Mr. Hess. As I understand the gentleman who testified here a few moments ago, they do not propose to pass on the merits of the case. They intend to leave that to the Department. But they do want to pass on the accounting end of it. Have you objections to that?

"Mr. Baier. No, sir; not if they stick to accounting or arithmetic, but a lot of their decisions do not stick to arithmetic and they go into the legality, into the merits. They can go back and say this case was with-

out *jurisdiction*. The Secretary of the Navy has appointed the Board and they determine as a quasi-judicial body what cases shall come into them and we do not want them to attack the *legality* of the Board's action or the Secretary of the Navy. (Italics supplied.)

"Mr. Hess. I understand they do not propose to do it."

In House Report No. 449, 82d Cong., 1st Sess., on H.R. 1181, May 15, 1951, the Committee says:

"During the course of the hearings, it developed that the Comptroller General felt that the question of jurisdiction of the Boards for the Correction of Military Records, and the *legality* of such award, should be within his purview, in addition to the normal responsibility to audit such payments. The committee takes the position that, the Congress having established Boards for the Correction of Military Records within each of the service departments, the *jurisdiction* of such Boards as well as the authority to determine the merits of each particular case should be reserved to such Boards, to the exclusion of the Comptroller General. This will not disturb the normal auditing authority of the Comptroller General." (Italics supplied.)

In the cases before us, the Comptroller General has done exactly what his representative has said he would not do, and what the Committee said he was not to have the power to do. He has refused to permit the Navy to pay concededly just debts to servicemen, and has placed his refusal upon the ground that the Secretary's Correction Board did not have *jurisdiction* to decide the case. He has no authority to determine the Correction Board's jurisdiction.

The Comptroller General, by his September 11, 1959 ruling, unless corrected by this court, will require these plaintiffs and other officers similarly situated to go to Congress for relief. The maximum of annoyance to the officers, the Congress, and this court will have been achieved. The maximum frustration of the purpose of the Reorganization Act of 1946, the purpose of relieving Congress by authorizing the military services to correct their own errors, will have been achieved. And nothing whatever, of any conceivable use, will have been accomplished.

Judge DURFEE has authorized me to say that he agrees with the views which I have expressed.